451 S.E.2d 755

**Annette J. PAINTER, Plaintiff Below, Appellant,**

v.

**Patrick Devolta PEAVY, Defendant Below, Appellee.**

No. 22206.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 21, 1994.

Decided Nov. 18, 1994.

Jerome McFadden, Gibson & McFadden, Princeton, for appellant.

Robert H. Miller, II, Whites' Law Office, Princeton, for appellee.

CLECKLEY, Justice:

This civil action was brought for damages arising out of an automobile collision. Annette J. Painter, the appellant and plaintiff below, appeals an order of the Circuit Court of Mercer County, entered September 7, 1993, which granted summary judgment in favor of Patrick Devolta Peavy, the appellee and defendant below. The circuit court found that an accord and satisfaction was reached between the parties when the plaintiff deposited a check from the defendant's insurance company tendered "[f]or full settlement of all claims," irrespective of the notation "[d]eposited under protest" by the endorsement. The plaintiff contends that summary judgment was inappropriate because genuine issues of material fact exist. We disagree with the plaintiff's argument and affirm the order of the circuit court.

## I.

The record shows that on September 17, 1989, the plaintiff was injured when the car she was driving was struck by the defendant's car. Garland Spangler, an attorney in Virginia, originally represented the plaintiff.[1] Receipts of medical bills totalling $708.60 were submitted to the defendant's insurer, Colonial Insurance Company of California (Colonial). A check for $750, dated January 31, 1990, was mailed to the plaintiff. The check stated "for full settlement of all claims." The claims examiner stated that the check was intended to settle the injury claim.[2]

In February, 1990, Mr. Spangler notified a claims adjuster for Colonial that the plaintiff rejected the settlement offer of $750. Affidavits of two Colonial claims examiners reveal that after Mr. Spangler rejected the settlement offer, he was instructed to return the check to Colonial. Colonial did not, however, stop payment of the check. The check was endorsed and it was deposited in Mr. Spangler's account in March, 1990. "Deposited under protested" was written on the back of the check.

The plaintiff stated in her affidavit that she had no contact whatsoever with Colonial nor with the defendant. The plaintiff's mother forwarded all documents to Mr. Spangler's office. The plaintiff had limited contact with her attorney. She signed a medical release and contract with Mr. Spangler, but could not remember whether she endorsed the $750 settlement check. She does not, however, assert that the signature is a forgery.

A lawsuit was filed on September 16, 1991. Negotiations between Mr. Spangler and Colonial continued.[3] The claims examiner as-

---

1. The plaintiff was no longer represented by Mr. Spangler when this suit was filed in September of 1991.

2. All settlement negotiations concerning the property damage claim were held with Samuel Painter, the plaintiff's father, because he was the owner of the car. In December, 1989, Colonial issued a check for $617 to cover the damages to his vehicle. The check stated "for full settlement of total loss less 38 days at $3.30 Colonial to retain salvage." The check was endorsed "Garland S. Spangler, Esq. deposited in protest for Samuel Painter." This settlement is not at issue here.

3. It is not clear from the record before this Court whether Colonial made a subsequent offer of settlement. Notes taken by the claims examiner would indicate that a subsequent settlement offer of $4,000 may have been made to the plaintiff.

sumed that the check for $750 was not cashed and was returned to Colonial, because the offer was rejected. During a routine review of the file, however, he discovered that the check had not been returned as requested.

In March of 1993, Colonial discovered that the settlement check had been deposited and that it had cleared their bank account.[4] The defendant then moved to amend its answer to assert the defense of accord and satisfaction. This motion was granted.

The defendant moved for summary judgment based upon its defense of accord and satisfaction. By order entered September 7, 1993, the circuit court granted summary judgment, finding "no genuine issue of material fact." The circuit court held that an accord and satisfaction was reached when the plaintiff retained and used the settlement check, and that her "attempt to alter the insurance company's offer was ineffectual."

## II.

 The sole issue in this appeal is whether summary judgment was appropriate.[5] A circuit court's entry of summary judgment is reviewed *de novo. See Drewitt v. Pratt,* 999 F.2d 774 (4th Cir.1993).[6] Under Rule 56(c) of the West Virginia Rules of Civil Procedure, summary judgment is proper only where the moving party shows that there is no genuine issue as to any material fact and that it is entitled to judgment as a

matter of law. In Syllabus Point 1 of *Andrick v. Town of Buckhannon,* 187 W.Va. 706, 421 S.E.2d 247 (1992), we reiterated the standard for granting summary judgment:

" 'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963)."

*See also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The circuit court's function at the summary judgment stage is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 213 (1986). We, therefore, must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Masinter v. WEBCO Co.,* 164 W.Va. 241, 262 S.E.2d 433 (1980). *Andrick,* 187 W.Va. at 708, 421 S.E.2d at 249.

 Nevertheless, the party opposing summary judgment must satisfy the burden of proof by offering more than a mere "scintilla of evidence," and must produce evidence

---

**4.** Colonial explained that the delay in discovering this information was due to the fact that its accounting department is operated separately and independently from the company's claims department.

**5.** Rule 56 of the West Virginia Rules of Civil Procedure plays an important role in litigation in this State. It is "designed to effect a prompt disposition of controversies on their merits without resort to a lengthy trial," if in essence there is no real dispute as to salient facts or if only a question of law is involved. *Oakes v. Monongahela Power Co.,* 158 W.Va. 18, 22, 207 S.E.2d 191, 194 (1974). Indeed, it is one of the few safeguards in existence that prevents frivolous lawsuits that have survived a motion to dismiss from being tried. Its principal purpose is to isolate and dispose of meritless litigation. *West Virginia Pride, Inc. v. Wood County,* 811 F.Supp. 1142 (S.D.W.Va.1993). To the extent that our prior cases implicitly have communicated a mes-

sage that Rule 56 is not to be used, that message is hereby modified. When a motion for summary judgment is mature for consideration and is properly documented with such clarity as to leave no room for controversy, the nonmoving party must take the initiative and by affirmative evidence demonstrate that a genuine issue of fact exists. Otherwise, Rule 56 empowers the trial court to grant the motion. *Hanks v. Beckley Newspapers Corp.,* 153 W.Va. 834, 172 S.E.2d 816 (1970).

**6.** Because the West Virginia Rules of Civil Procedure are practically identical to the Federal Rules, we give substantial weight to federal cases, especially those of the United States Supreme Court, in determining the meaning and scope of our rules. *See generally Burns v. Cities Serv. Co.,* 158 W.Va. 1059, 217 S.E.2d 56 (1975); *Aetna Casualty & Sur. Co. v. Federal Ins. Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963).

sufficient for a reasonable jury to find in a nonmoving party's favor. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512, 91 L.Ed.2d at 214. Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Therefore, while the underlying facts and all inferences are viewed in the light most favorable to the nonmoving party, the nonmoving party must nonetheless offer some " 'concrete evidence from which a reasonable ... [finder of fact] could return a verdict in ... [its] favor' " or other " 'significant probative evidence tending to support the complaint.' " *Liberty Lobby,* 477 U.S. at 256, 106 S.Ct. at 2514, 91 L.Ed.2d at 217, *quoting First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569, 593 (1968); *Crain v. Lightner,* 178 W.Va. 765, 364 S.E.2d 778 (1987). It is through the lens of these principles that we examine the circuit court's grant of summary judgment.

■ The plaintiff asserts that a genuine issue of material fact exists as to whether an accord and satisfaction was reached. In Syllabus Point 1 of *Charleston Urban Renewal Authority v. Stanley,* 176 W.Va. 591, 346 S.E.2d 740 (1985), we set forth the following elements of accord and satisfaction:

"To show an accord and satisfaction, the person asserting the defense must prove three elements: (1) Consideration to support an accord and satisfaction; (2) an offer of partial payment in full satisfaction of a disputed claim; and (3) acceptance of the partial payment by the creditor with knowledge that the debtor offered it only upon the condition that the creditor accept the payment in full satisfaction of the disputed claim or not at all."

It is undisputed that the first element was met. Consideration was paid by the settlement check. However, the plaintiff argues that nevertheless there exist genuine issues of fact as to the remaining two elements. We disagree.

In documents supporting his motion for summary judgment, the defendant offered evidence on the second element by submitting the $750 settlement check. The words "[f]or full settlement of all claims" were conspicuously written on the top of the check.[7] The check was clearly an offer for full satisfaction of the disputed claim.

■ Furthermore, the record supports the defendant's contention that the plaintiff understood Colonial offered the check upon the condition that it would be accepted in full satisfaction of the claim. The words "[f]or full settlement of all claims" leave little room for misunderstanding Colonial's intention. The fact that the words "[d]eposited under protest" were written on the instrument demonstrates the plaintiff's awareness of Colonial's condition.[8]

7. The plaintiff argues that the check did not have the usual release stamped on the back which is used on checks which Colonial intends to be final. This argument is not supported by the record. The claims examiner stated that although their check-writing system had changed since this check was written, the notation "For full settlement of all claims" was intended to communicate that cashing the check would settle the claim.

8. The plaintiff also argues that pursuant to W.Va. Code, 46-1-207(a) (1963), she accepted the partial payment "under protest" and thus avoided the conditions stated. Although we are not convinced that the West Virginia Uniform Commercial Code (UCC) is applicable to this situation, the result we reach would not be different under the UCC. By its very terms, the UCC does not provide the relief envisioned by the plaintiff. As a general notion, subsection (b) states explicitly that "Subsection (a) does not apply to an accord and satisfaction." More specifically, under W.Va.Code, 46-3-311(c)(2) (1993), in order to benefit from a statement of "reservation," it appears that the plaintiff was obligated to tender repayment of the amount of the instrument to the insurance company within ninety days. Subsection (d) states that the insurance company *is* discharged if within a reasonable time before the check was cashed, the plaintiff knew that the check "was tendered in full satisfaction of the claim." Finally, we note that where W.Va.Code, 46-3-311, does not apply, "the issue of whether an accord and satisfaction has been effected is determined by the law of contract." *See Official Comments* to W.Va.Code, 46-1-207.

Once the insurance agent requested that the check be returned after the plaintiff's attorney rejected the offer of $750, the plaintiff clearly did not have the legal option to ignore the condition written on the check and use the cash proceeds.[9] Again, on this point, we find *Charleston Urban Renewal Authority v. Stanley*, 176 W.Va. at 593–94, 346 S.E.2d at 743, to be persuasive:

"The creditor of an unliquidated claim must either accept or reject the debtor's offer; he is not free unilaterally to modify the debtor's original offer and then proceed to accept the offer so modified.

"If a check is tendered bearing the words 'payment in full' or some other words of similar purport, the payee may either accept the check and acknowledge the accord and satisfaction, or return the check to the payor. If the payee chooses the latter course of action he may continue to dispute the underlying claim." [10]

We recognized in *Stanley*, 176 W.Va. at 595, 346 S.E.2d at 744, that the " 'full payment' check rule is a harsh rule, [and] it [therefore] must be applied strictly and not liberally." The pertinent facts of this case which are clear and undisputed, however, lead only to the reasonable conclusion that the plaintiff's retention and use of the check of Colonial constituted an accord and satisfaction.

Finally, the plaintiff urges us to hold that because negotiations continued for more than a year after the settlement check was cashed, Colonial's actions constituted a waiver of the condition that the check be accepted as payment in full and the waiver was sufficient to preclude the granting of the defendant's motion for summary judgment. Some jurisdictions have concluded, based on the factual circumstances of the case, that a completed contract of accord and satisfaction was rescinded by agreement or waived by the debtor's subsequent actions. *See* Annot., 42 A.L.R.4th § 12 at 12 (1985). In *RTL Corporation v. Manufacturer's Enterprises, Inc.*, 429 So.2d 855, 856–57 (La.1983), the Supreme Court of Louisiana explained how such "waiver" is governed by the law of contracts:

"A contract is the law between the parties and it cannot be revoked, unless by mutual consent of the parties, or for causes acknowledged by law.... Implicit in this precept is the proposition that when a dispute arises between the parties to a contract as to its provisions, they may by further mutual consent freely modify their contract....

"These precepts are called into play when a debtor tenders a check as payment in full of an obligation due under contract to his creditor, the amount of which has been disputed by the parties. This offer by the debtor confers on the creditor a specific right to consent to full satisfaction of the debt by accepting the check or to

---

**9.** We believe it is significant that the plaintiff did not cash the check herself, but deposited it in her attorney's account. This is not a case where a wary person, ignorant of the law, made a mistake. Rather, the plaintiff and her attorney gambled on the insurance company's generosity and lost. Although the plaintiff claims that she did not know these facts or that she cannot remember them, the knowledge, conduct and words of her authorized attorney are imputed to her. *See Gilreath v. Sentry Ins. Co.*, 38 Conn.Supp. 422, 450 A.2d 873 (1982) (acceptance of check for full settlement under uninsured motorist policy constituted an accord and satisfaction even though the insured was unaware that the effect of doing so would close the entire claim). We also note that no affidavit from the attorney who was representing the plaintiff during negotiations was filed in this case contradicting our conclusions.

**10.** *See also Connecticut Printers, Inc. v. Gus Kroesen, Inc.*, 134 Cal.App.3d 54, 184 Cal.Rptr. 436 (1982) (accord and satisfaction when check tendered as payment in full was deposited, notwithstanding the notation "payment accepted without prejudice"); *Eder v. Yvette B. Gervey Interiors, Inc.*, 407 So.2d 312 (Fla.App.1981) (accord and satisfaction not avoided when check for full settlement was endorsed with the notation "the above is not acceptable as full payment"); *Chancellor, Inc. v. Hamilton Appliance Co., Inc.*, 175 N.J.Super. 345, 418 A.2d 1326 (1980) (accord and satisfaction met even though payee endorsed the check "without prejudice"); *Stultz Electric Works v. Marine Hydraulic Engineering Co.*, 484 A.2d 1008 (Me.1984) (check cashed for "settlement in full" gave rise to accord and satisfaction even though payee wrote "endorsed and deposited under protest without prejudice and with a reservation of our rights to the balance of," court held that such language was merely a counteroffer that was not rendered for acceptance).

retain his rights under the prior agreement by rejecting the check. Without the debtor's express or tacit consent, the creditor cannot make use of the check and then renounce the condition upon which the debtor made the offer....

"... As we have indicated, however, under our law whether the parties altered their original contract or entered a transaction or compromise depends on whether there was mutual consent.... [I]t is necessary to examine the evidence and determine whether the parties arrived at a new agreement or acted under the existing one." (Citations omitted).

We agree with the Louisiana court to the extent that it suggests that "whether the parties altered their original contract or entered a transaction or compromise depends on whether there was mutual consent[.]" In the case at bar, however, we do not find the evidence sufficient to create a genuine issue of fact as to mutual consent. The evidence in the record is undisputed that Colonial requested the plaintiff's attorney to return the check after the offer was verbally rejected. Colonial continued negotiations only because it assumed the check was returned without being cashed. Thus, we find that the evidence supporting a conclusion or inference of mutual consent does not exist.

Accordingly, for the reasons set forth above, the order of the Circuit Court of Mercer County granting summary judgment is affirmed.

Affirmed.

BROTHERTON, C.J., did not participate.

MILLER, Retired Justice, sitting by temporary assignment.